**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PITNEY BOWES PRESORT SERVICES, LLC

Plaintiff,

v. Case No. ____________

BCS INVESTMENT GROUP, LLC
d/b/a KALEIDOSCOPE SERVICES,

Defendant.

---

**COMPLAINT AND DEMAND FOR A JURY TRIAL**

**PRELIMINARY STATEMENT**

1. Plaintiff Pitney Bowes Presort Services, LLC (as further described below) brings this action against Defendant BCS Investment Group, LLC d/b/a Kaleidoscope Services to recover an unpaid postage deficit of $205,750.91, plus accrued contractual interest, arising from Defendant's breach of a Master Services Agreement ("MSA") and two related Statements of Work ("SOWs") governing presort mail processing and postage-advance services. Despite receiving the full benefit of Plaintiff's services over an extended period, Defendant failed to maintain the required postage deposit balances, depleted the deposit accounts to a substantial negative balance, and has refused to remit payment notwithstanding repeated demands and a formal Notice of Breach and Demand for Payment.

## PARTIES

2. Plaintiff Pitney Bowes Presort Services, LLC (hereinafter, "Plaintiff" or "PBPS")[1] is a limited liability company formerly known as Pitney Bowes Presort Services, Inc., formed under the laws of the State of Delaware. Its sole member is Pitney Bowes, Inc., a Delaware corporation with its principal place of business in Stamford, Connecticut.

3. Defendant BCS Investment Group, LLC d/b/a Kaleidoscope Services (hereinafter, "Defendant" or "BCS") is a Florida limited liability company with its principal place of business at 121 Anclote Blvd, Tarpon Springs, Florida 34689. Upon information and belief, Brian Sauer is the President and sole principal owner/member of BCS and he is a citizen of the State of Florida. Defendant's registered agent is Brian Sauer, 19640 Gulf Blvd, Unit 6-1, Indian Shores, FL 33785.

## JURISDICTION AND VENUE

4. This Court has original subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Plaintiff's principal claim is for $205,750.91 in unpaid postage-deficit damages, which exceeds the jurisdictional threshold.

[1] Formerly Pitney Bowes Presort Services, Inc.

5. Plaintiff is a citizen of Delaware and Connecticut. Defendant is a citizen of Florida for diversity purposes (its citizenship being determined by the domicile of its members). Complete diversity of citizenship exists between Plaintiff and Defendant.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this District (Tarpon Springs, Florida, which is within the Tampa Division of the Middle District of Florida) and a substantial part of the events or omissions giving rise to the claims occurred in this District, including the performance of mail pickup and presort services at Defendant's Tarpon Springs facility, the accumulation of the postage deficit, the suspension of services, and the delivery of the formal Notice of Breach and Demand for Payment to Defendant at that address.

7. The MSA, at Section 24, provides that the Agreement "shall be governed by the laws of the State of Delaware, without regard to conflicts of law principles." Accordingly, Delaware substantive law governs the claims herein, notwithstanding that this action is brought in a Florida federal forum. Neither the MSA nor either SOW contains any forum-selection clause or mandatory arbitration provision.

## FACTUAL BACKGROUND

### A. The Master Services Agreement and Statements of Work

8. On or about November 14, 2016, PBPS and BCS entered into a Master Services Agreement (the "MSA"), which was signed by Nicole M. Ziska, Chief Operating Officer of PBPS, on December 28, 2016, and by Brian Sauer, President of BCS, on December 19, 2016.

9. Concurrently with the MSA, the parties executed two Statements of Work incorporated by reference into the MSA: (a) SOW No. 1 (First Class Mail), under which PBPS agreed to pick up, barcode, sort, and submit BCS's First Class Mail from BCS's location at 121 Anclote Blvd, Tarpon Springs, Florida via PBPS's Jacksonville, Florida facility (average daily volume approximately 12,000 pieces); and (b) SOW No. 2 (Direct Mail Solutions), under which PBPS agreed to pick up, sort, and submit BCS's Standard/Direct Mail to the United States Postal Service from BCS's Tarpon Springs address (estimated approximately 120,000 pieces per week).

10. Under SOW 1, Schedule 4.0, BCS was required to pay an initial postage deposit of $25,000 before first mail submission, plus weekly payments sufficient to cover estimated postage. Any shortages were required to be paid with the next regular payment, no later than 30 days after service. If BCS failed to maintain the

required deposit, PBPS could immediately suspend performance and, at BCS's option, hold or return the mail.

11. Under SOW 2, Schedule 2, BCS was required to pay an initial postage deposit of $30,000, plus weekly "Service Cost" payments to maintain sufficient postage balances. The same self-help remedy for failure to maintain the deposit applied.

12. MSA Section 4 provides that PBPS invoices monthly, with payment due within 30 calendar days of the invoice date. If Client fails to make an undisputed payment when due, PBPS may suspend performance on five (5) days' prior written notice. Past-due amounts bear interest at 1.5% per month (or the maximum rate allowed by law) until paid. An amount is "in dispute" only if Client gives PBPS written notice by the payment due date with sufficient detail for PBPS to research the dispute.

13. MSA Section 7 provides for a three-year Initial Term commencing November 14, 2016, automatically renewing in successive one-year Renewal Terms absent thirty (30) days' written non-renewal notice by either party.

14. MSA Section 8 defines an "Event of Default" as a material breach of the MSA or any SOW not cured within thirty (30) days after written notice of the breach.

15. MSA Section 9 provides that, upon an Event of Default, the non-defaulting party may terminate the Agreement immediately upon written notice, or continue the Agreement while reserving all rights, and may pursue legal or equitable action to enforce performance or seek damages.

16. MSA Section 15 (Limitation of Liability) caps only PBPS's liability to BCS; it does not limit BCS's liability to PBPS.

**B. Defendant's Breach and the Accumulating Postage Deficit**

17. BCS was required under both SOWs to make regular weekly payments to maintain its postage deposit accounts and to timely pay all invoiced amounts under MSA Section 4. BCS failed to do so.

18. By approximately December 2, 2024, BCS had accumulated a postage deficit of $196,215.42, reflecting the amount by which BCS's draws on its postage deposit accounts exceeded its payments. PBPS put BCS representatives on notice of this deficit.

19. On or about December 6, 2024, Carol Dore-Falcone, BCS's Chief Financial Officer, indicated that a payment of $127,012.06 via ACH was forthcoming. However, this payment was insufficient to eliminate the deficit.

20. Despite the representation by BCS's Chief Financial Officer, by December 17, 2024, the deficit had risen to $240,462.96.

21. As a result, PBPS demanded information regarding a year-end payoff plan.

22. On or about January 16, 2025, Vinay Gandhi, Vice President of Presort Services East at PBPS, notified BCS that PBPS would not extend further flexibility into the new year and demanded that the deficit be brought below $75,000 by the end of January 2025 to avoid pickup disruptions.

23. By January 24, 2025, the deficit had grown to $421,497.80, with no ACH payment received despite prior assurances.

24. On January 30, 2025, PBPS suspended all mail-pickup services for nonpayment, communicating to BCS that PBPS "cannot continue to provide services without payment." PBPS held already-collected mail pending payment. This suspension was independently authorized under the self-help remedies of SOW 1 Schedule 4.0 and SOW 2 Schedule 2.

**C. Post-Suspension Communications and Partial Payments**

25. Following the suspension of services, Brian Sauer of BCS, communicated sporadically and primarily by telephone with PBPS representatives, but failed to ensure that the outstanding amounts due and owing to PBPS were paid.

26. In approximately August 2025, Sauer communicated that payments would resume. A single payment was received by PBPS on or about September 5,

2025 in the amount of $25,009.05. Thereafter, BCS ceased all communication and failed to make further payments.

27. No billing disputes were raised by BCS at any time, whether in writing or otherwise, concerning the amounts owed. As PBPS confirmed internally, "[w]e had no issues, such as billing dispute, etc., to justify this liability."

**D. Reconciliation of the Postage Deficit Balance**

28. PBPS maintained two postage deposit accounts for BCS: Account 0-10053-1 (used to bill postage for First Class Flats and manual metering fees) and Account 0-10053-2 (a value-added rebate account for Marketing Mail). Upon reconciliation, including netting the positive balance in Account 0-10053-2 against the negative balance in Account 0-10053-1, the total outstanding balance owed by BCS to PBPS is $205,750.91.

**E. Notice of Breach and Demand for Payment**

29. PBPS sent a formal Notice of Breach and Demand for Payment to Brian Sauer at BCS Investment Group, LLC d/b/a Kaleidoscope, 121 Anclote Blvd, Tarpon Springs, Florida, via UPS overnight delivery, in compliance with MSA Section 25's notice provisions.

30. The Notice: (a) cited SOW 1 Schedule 4.0 and SOW 2 Schedule 2's deposit and weekly payment requirements; (b) stated that BCS failed to send required weekly payments and depleted the initial deposits, leaving a negative

balance of $205,750.91; (c) stated that written notice of default was sent on January 30, 2025, and was not cured within the 30-day period required under MSA Section 8; (d) stated that PBPS elected to terminate the Agreement effective immediately pursuant to MSA Section 9, and that the letter constituted formal written notice of default under MSA Section 8; (e) afforded BCS a 10-day cure period, after which PBPS reserved the right to refer the account to collections, commence legal action to recover the outstanding balance, accrued interest, attorneys' fees, and other damages permitted by law and the Agreement, and pursue other remedies under Delaware law per MSA Section 24; and (f) reserved all rights and remedies.

31. BCS did not cure the default within the 10-day period provided, nor has BCS made any payment or other response since receiving the Notice.

32. Pursuant to MSA Section 21, PBPS's prior forbearance and acceptance of partial payments does not constitute a waiver of any right or preclude enforcement of BCS's contractual obligations. Pursuant to MSA Section 22, no oral or informal arrangement discussed between the parties constitutes a binding modification of the Agreement absent a signed written document, and no such signed written document exists.

## COUNT I

## BREACH OF CONTRACT

33. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 32 above as though fully set forth herein.

34. The MSA and the two SOWs constitute valid, binding, and enforceable contracts between PBPS and BCS, duly executed by authorized representatives of both parties and supported by adequate consideration.

35. PBPS fully performed its obligations under the MSA and both SOWs, including providing presort mail processing and postage-advance services to BCS throughout the term of the Agreement.

36. BCS materially breached its obligations under the MSA and the SOWs by, among other things: (a) failing to maintain the required postage deposit balances under SOW 1 Schedule 4.0 and SOW 2 Schedule 2; (b) failing to make required weekly payments; (c) failing to pay invoiced amounts within 30 days as required by MSA Section 4; and (d) failing to cure such breaches within 30 days after written notice thereof as required by MSA Section 8.

37. As a direct and proximate result of BCS's material breaches, PBPS has suffered damages in the amount of $205,750.91 in principal, representing the outstanding postage deficit balance, plus contractual pre-judgment interest accruing at the rate of 1.5% per month (18% per annum) pursuant to MSA Section 4 from the

date(s) each amount became due through the date of judgment, together with post-judgment interest and costs of suit.

**COUNT II**

**ACCOUNT STATED (PLED IN THE ALTERNATIVE)**

38. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 32 above as though fully set forth herein.

39. In the alternative to Count I, and to the extent necessary, PBPS rendered periodic statements of the account balance to BCS reflecting the amounts owed by BCS under the MSA and SOWs, including communications detailing the deficit of $196,215.42 (December 2024), $240,462.96 (mid-December 2024), and $421,497.80 (January 2025), ultimately resulting in the reconciled balance of $205,750.91.

40. BCS received these statements and did not, at any time, submit a written dispute in accordance with the procedure set forth in MSA Section 4 (which requires written notice by the payment due date with sufficient detail for PBPS to research the dispute). BCS's failure to timely and properly dispute the stated balances constitutes an implied agreement to the correctness of the accounts as stated.

41. By receiving and retaining the benefit of PBPS's services while acknowledging the stated account balances without timely written dispute, BCS impliedly promised to pay the stated balance of $205,750.91.

42. BCS has failed and refused to pay the stated balance, and PBPS has been damaged in the amount of $205,750.91, plus pre-judgment interest (at the contractual rate of 1.5% per month under MSA Section 4, or alternatively at the statutory rate), post-judgment interest, and costs of suit.

## COUNT III

## UNJUST ENRICHMENT (PLED IN THE ALTERNATIVE)

43. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 32 above as though fully set forth herein.

44. In the alternative to Counts I and II, and solely to the extent that the Court determines the MSA and/or SOWs are unenforceable or inapplicable to some or all of the amounts at issue, PBPS conferred a benefit upon BCS by providing presort mail processing and postage-advance services, advancing substantial sums for USPS postage on BCS's behalf, and depleting its own deposit accounts to fund BCS's mailings.

45. PBPS conferred this benefit upon BCS with a reasonable expectation of payment therefor, and BCS accepted and received the benefit of PBPS's services with knowledge that PBPS expected compensation.

46. BCS has retained the benefit of PBPS's services—having had its mail processed and postage advanced—without paying for the value received.

47. It would be inequitable and unjust for BCS to retain the benefit of PBPS's services without compensating PBPS for the value of those services.

48. PBPS has been damaged in an amount not less than $205,750.91, representing the value of the postage advanced and services rendered for which BCS has not paid, plus pre-judgment interest at the statutory rate, post-judgment interest, and costs of suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Pitney Bowes Presort Services, LLC respectfully prays that this Court enter judgment in its favor and against Defendant BCS Investment Group, LLC d/b/a Kaleidoscope Services, and award the following relief:

A. On Count I (Breach of Contract): Judgment against Defendant in the amount of $205,750.91 in principal damages, plus contractual pre-judgment interest at the rate of 1.5% per month (18% per annum) pursuant to MSA Section 4 from the date(s) each amount became due through the date of judgment;

B. On Count II (Account Stated, in the alternative): Judgment against Defendant in the amount of $205,750.91, plus pre-judgment interest at the contractual rate of 1.5% per month under MSA Section 4 (or, alternatively, at the applicable statutory rate) from the date(s) each amount became due through the date of judgment;

C. On Count III (Unjust Enrichment, in the alternative): Judgment against Defendant in an amount not less than $205,750.91, representing the value of services and postage advanced, plus statutory pre-judgment interest from the date(s) each amount became due through the date of judgment;

D. Post-judgment interest at the rate provided by 28 U.S.C. § 1961;

E. Attorney's fees as permitted by contract or law and costs of suit, including filing fees and service expenses;

F. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Dated: October 12, 2026

Respectfully submitted,

*/s/ Elizabeth L. Fite*
Elizabeth L. Fite, Esq.
*Lead Counsel*
Florida Bar No. 119519
Kutak Rock, LLP
3424 Peachtree Road, NE, Suite 900
Atlanta, GA 30326
Telephone: 404-222-4662
Email: elizabeth.fite@kutakrock.com

*Counsel for Plaintiff Pitney Bowes Presort Services, LLC*